UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GILBERT J. GERVAIS,<br>　　Plaintiff, | :<br>:<br>: |
| v. | : 　3:03cv2102 (PCD) |
| | : |
| RIDDLE & ASSOCIATES, P.C.,<br>　　Defendant. | :<br>: |

**RULING ON MOTION FOR RECONSIDERATION**

Defendant moves for reconsideration of this Court's Ruling on Cross-Motions for Summary Judgment [Doc. No. 32] filed March 31, 2005. For the reasons stated herein, Defendant's Motion for Reconsideration [Doc. No. 33] is **granted,** and the prior Ruling is **vacated in part** and **affirmed in part**.

**I.　　STANDARD OF REVIEW**

The standard for granting a motion for reconsideration is strict. Reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked–matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., 70 F.3d 255, 257 (2d Cir.1995); see also United States v. Sanchez, 35 F.3d 673, 677 (2d Cir.1994) (granting reconsideration when a "need is shown to correct a clear error of law or to prevent manifest injustice"). A "motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." Shrader, 70 F.3d at 257.

1

## II. BACKGROUND[1]

Defendant Riddle & Associates, P.C. ("Riddle"), a professional corporation organized under the laws of Utah, operates as a law firm specializing in consumer debt collection. In November 2003, Defendant was retained to recover on Plaintiff Gilbert J. Gervais's past due account. The most recent activity on Plaintiff's account had occurred in 1993, and by 2003 any litigation to recover the debt was barred by the statute of limitations. On November 7, 2003, Defendant sent Plaintiff a collection letter seeking payment on the debt and offering a discount for prompt payment. From mid-November until the end of November, Defendant also attempted unsuccessfully to contact Plaintiff by telephone eleven times and left several messages. On December 8, 2003, Plaintiff filed the present action alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq., and the Connecticut Unfair Trade Practices Act ("CUTPA"), CONN. GEN. STAT. § 42-110a, et seq. Defendant filed a counterclaim requesting a declaratory judgment that its collection efforts violated neither the FDCPA nor CUTPA. Defendant and Plaintiff filed a Motion and Cross-Motion for Summary Judgment [Docs. Nos. 17, 20], respectively, and in its Motion Defendant also asserted an affirmative bona-fide error defense under 15 U.S.C. § 1692k. On March 31, 2005, this Court granted Plaintiff's Cross-Motion for Summary Judgment for both the FDCPA and CUTPA claims, rejected Defendant's bona-fide error defense, and denied Defendant's Motion for Summary Judgment. Defendant now seeks reconsideration of that Ruling.

---

[1] The facts in this case are set forth in detail in this Court's Ruling on Cross-Motions for Summary Judgment [Doc. No. 32], familiarity with which is assumed. See Gervais v. Riddle & Assocs., P.C., 363 F. Supp. 2d 345 (D. Conn. 2005). For that reason, only those facts necessary to the resolution of this motion will be mentioned here.

**III. DISCUSSION**

The FDCPA prohibits "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. This prohibition includes "[t]he threat to take any action that cannot legally be taken" as well as "[t]he false representation of . . . the character, amount, or legal status of any debt." Id. §§ 1692e(5), (2)(A). More generally, the FDCPA also prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt." Id. § 1692e(10).

    A.    <u>The False Threat of Litigation Claim Under § 1692e(5)</u>

Previously, in granting Plaintiff's Cross-Motion for Summary Judgment, this Court concluded that no genuine issue of material fact existed as to whether Defendant made a false threat of litigation under § 1692e(5). This Court based its conclusion on the content of a letter and several telephone messages that were left with Plaintiff by Defendant. The letter contained a letterhead identifying Defendant as "Attorneys & Counselors at Law," and the following statements: (1) "[o]ur law firm has been retained to collect from you," (2) "[o]ur client has agreed to," and (3) "[i]f you want to resolve this matter, you must either pay the Total Amount Due . . . or call our law firm . . . and work out arrangements for payment." (Rul. Mot. Summ. J. 6-7; Riddle & Assocs. Collection Letter 1, Ex. A. to Pl.'s Cross-Mot. Summ. J.) The telephone messages stated: "This is the law firm of Riddle & Associates calling you about an important legal matter." (Rul. Mot. Summ. J. 7.) Upon reconsideration, this Court affirms its prior Ruling.

To evaluate claims under the FDCPA, a court views the facts using the "least-sophisticated-consumer standard." <u>Clomon v. Jackson</u>, 988 F.2d 1314, 1318 (2d Cir.

1993); accord Bentley v. Great Lakes Collection Bureau, 6 F.3d 60, 62 (2d Cir. 1993). This standard recognizes that "consumers of below-average sophistication or intelligence are especially vulnerable to fraudulent schemes," while at the same time "carefully preserve[s] the concept of reasonableness." Clomon, 988 F.2d at 1318. Hence, the least-sophisticated-consumer standard serves a dual purpose: It "(1) ensures the protection of all consumers, even the naive and the trusting, against deceptive debt collection practices, and (2) protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices." Id. at 1320.

As a threshold matter, a court evaluating a claim under § 1693e(5) must determine whether litigation to secure the collection of a debt "[could] not legally be taken or . . . is not intended to be taken." 18 U.S.C. § 1692e(5). To make this determination in the instant case, the Court must evaluate the nature of Plaintiff's debt. Since the last activity on Plaintiff's account occurred in 1993, legal action by Plaintiff's creditor was barred by the six-year statute of limitations by the time Defendant sent Plaintiff a collection letter in 2003. See CONN. GEN. STAT. § 42a-3-118. Nonetheless, Connecticut courts have long held that "[t]he Statute of Limitations creates a defense to an action. It does not erase the debt. . . . [T]he defense can be lost by an unequivocal acknowledgment of the debt, such as . . . an unqualified recognition of the debt, or a payment on account." Wells v. Carson 140 Conn. 474, 476, 101 A.2d 297 (1953) (citing Potter v. Prudential Ins. Co., 108 Conn. 271, 280, 142 A. 891 (1928); Sears v. Howe, 80 Conn. 414, 417, 68 A. 983 (1908)). Since the running of the statute of limitations does not extinguish a debt, courts have permitted debt collectors to send collection letters for time-barred debt where the letters do not threaten collection action. See Wallace v. Capital One Bank, No.

4

CIV. JFM-00-2290, 2001 WL 357301, at *2 (D. Md. April 6, 2001). Courts have also found that absent a threat of litigation or other remedy that the debt collector could not legally pursue, there is no FDCPA violation in attempting to collect on a time-barred debt. See Freyermuth v. Credit Bureau Servs., Inc., 248 F.3d 767 (8th Cir. 2001); Johnson v. Capital One Bank, No. Civ.A. SA00CA315EP, 2000 WL 1279661, at *2 (W.D. Tex. May 19, 2000). However, where a debt collector threatens to sue on a debt it knew was time-barred by the statute of limitations, a violation of the FDCPA will lie. See Stepney v. Outsourcing Solutions, Inc., No. 97 C 5288, 1997 WL 722972, at * 5 (N.D.Ill. Nov. 13, 1997); Kimber v. Federal Fin. Corp., 668 F. Supp. 1480, 1488-90 (M.D. Ala. 1987). Therefore, because Plaintiff's debt was time-barred, the next step under § 1692e(5) is to determine whether Defendant's communications constituted a threat of litigation.

In making this determination, courts have been careful to observe that there must be "more than the fact that a collection letter is from an attorney to find a section 1692e(5) violation." Kapeluschnik v. LeSchack & Grodensky, P.C., No. 96cv2399 (ERK) (CLP), 1999 U.S. Dist. LEXIS 22883, at *19 (E.D.N.Y. Aug. 25, 1999); see Veillard v. Mednick, 24 F. Supp. 2d 863, 867 (N.D. Ill. 1998) ("[T]he mere inference that legal action could be taken because the letter is on law firm letterhead is not enough for § 1692e(5)."). The claim that "every collection letter from an attorney carries an implied threat of legal action" has been described by courts as "overbroad," Kapeluschnik, 1999 U.S. Dist. LEXIS 22883, at *18, and "frivolous," Sturdevant v. Thomas E. Jolas, P.C., 942 F. Supp. 426, 430 (W.D. Wis. 1996). At the same time, courts have noted that "in cases where the likelihood of legal action is not clear from the language, the

letter's source can be determinative, especially if it purports to be from an attorney." Jenkins v. Union Corp., 999 F. Supp. 1120 (N.D. Ill. 1998). "Because to most consumers, the relevant distinction between a collection agency and an attorney is the ability to sue," a letter signed by an attorney signals to the unsophistcated consumer that legal action is at hand. United States v. Nat'l Fin. Servs., 98 F.3d 131, 136-37 (4th Cir.1996); see Russey v. Rankin, 911 F. Supp. 1449, 1454 (D.N.M. 1995) (holding that a letter "clearly threaten[ed] litigation" when it purported to be from an attorney and declared that "we have the legal right to file a lawsuit").

In addition to the source of the communication, courts look to the content of the communication in order to determine whether "[t]he clear import of the language, taken as a whole, is that some type of legal action has already been or is about to be initiated and can be averted from running its course only by payment." Pipiles v. Credit Bureau of Lockport, Inc., 886 F.2d 22, 25 (2d Cir. 1989); see Bentley, 6 F.3d at 62 (finding a false threat of litigation where the "'least sophisticated consumer' would interpret . . . language to mean that legal action was authorized, likely and imminent"). Consistent with this focus on "imminence," some courts have held that even where communications specifically refer to legal action, a threat does not exist where the references are couched in terms of mere possibility. For example, in Madonna v. Academy Collection Service, Inc., No. 3:95CV00875 (AVC), 1997 WL 530101, at *1-*2 (D. Conn. Aug. 12, 1997), a debt collector sent three letters that all informed the debtor: "Our client may choose to pursue legal action." The last letter preceded this statement with the declaration that "it is our intent to close our files and inform our client that you have refused to cooperate." Id. at *2. The letter went on to describe possible consequences of litigation and suggested that the

6

client obtain legal assistance. Id. The court held, however, that the letters' references to legal action were not threats to pursue it; the letters merely communicated that litigation was one possible course of action. "Far from threatening legal action, the statement . . . indicates that legal action is an option available to the creditor, who may indeed choose to take advantage of it." Id. at *7; see Knowles v. Credit Bureau of Rochester, No. 91-CV-14S, 1992 WL 131107, at *1-*2 (W.D.N.Y. May 28, 1992) (holding that the statement "failure to pay will leave our client with no choice but to consider legal action" did not violate § 1692e(5) by threatening legal action, because "[a]t most, the language . . . threatened that the creditor will have to consider legal action" and therefore "[n]o action of any kind is threatened by defendant collection agency").

After reviewing the applicable precedent, this Court affirms its prior finding that Defendant's communications constituted a threat of litigation. It is true that past decisions have emphasized the importance of "imminence" in determining whether a threat of litigation exists. See, e.g., Bentley, 6 F.3d at 62; Pipiles, 886 F.2d at 25. One may infer that an "imminence" requirement must entail specific and foreboding warnings of rapidly approaching legal action. However, this Court recognizes that an "imminent" threat of litigation may be imparted, perhaps even more effectively so, with skillfully crafted ambiguity and innuendo. Such an ambiguous threat of imminent litigation would be particularly useful to the debt collector where, as in the instant case, full disclosure of the relevant facts to the debtor would probably decrease the likelihood of payment. Indeed, the Pipiles court held that "given the *vagueness* of the language in the Notice, we conclude that a violation of section 1692e(5) and (10) has been established." 886 F.2d at 25 (emphasis added). Similarly, in Jenkins, the court noted that "in cases where the likelihood of legal action *is not clear from the language*, the letter's source can be determinative,

especially if it purports to be from an attorney." 999 F. Supp. at 1137 (emphasis added). These cases recognize the common sense notion that "[a]n unsophisticated consumer, getting a letter from an 'attorney,' knows the price of poker has just gone up." Avila v. Rubin, 95 F.3d 222, 228 (7th Cir. 1996). Moreover, this notion is fully consistent with cases such as Madonna and Knowles, in which a threat of litigation was not found where legal action was couched in terms of possibility. The least-sophisticated consumer, when explicitly told that litigation is merely being considered as an option, cannot reasonably believe that litigation is authorized and rapidly forthcoming, particularly where the party making the communication is not an attorney. However, when confronted with nebulous language on law-firm letterhead alluding to a "client" who has "retained" the "law firm" to "collect" in the context of an "important legal matter," the unsophisticated consumer cannot be faulted for fearing imminent litigation. Indeed, in light of the surrounding circumstances, Defendant's statement "[i]f you want to resolve this matter, *you must either* pay the Total Amount Due . . . *or* call our law firm . . . and work out arrangements for payment," (Riddle & Assocs. Collection Letter 1 (emphasis added)), suggests to the least-sophisticated consumer that "legal action . . . is about to be initiated and can be averted from running its course only by payment." Pipiles, 886 F.2d at 25.

By affirming its prior Ruling, this Court does not hold that every collection letter from an attorney carries an implied threat of legal action. However, debt collectors cannot exploit the naivete of consumers through vague and unnecessary legal references. While all communications from Defendant were honest in fact, the least-sophisticated-consumer standard clearly contemplates that debtors shall be protected from nonfeasance as well as malfeasance. See Nat'l Fin. Servs., 98 F.3d at 138 (quoting Miller v. Payco-Gen. Am. Credits, Inc., 943 F.2d 482, 485

8

(4th Cir. 1991)) (stating, in reference to § 1692e(5), that "[t]here are numerous and ingenious ways of circumventing [the law] under a cover of technical compliance. [The defendants have] devised one such way, and we think that to uphold it would strip the statute of its meaning") (alterations in original). As mentioned previously, "to most consumers, the relevant distinction between a collection agency and an attorney is the ability to sue," Nat'l Fin. Servs., 98 F.3d at 136, and as the Avila court observed, "that clearly is the reason why the dunning campaign escalates from the collection agency, which might not strike fear in the heart of the consumer, to the attorney, who is better positioned to get the debtor's knees knocking." 95 F.3d at 228. Defendant's own website, in an effort to solicit new customers, emphasizes along with their "exceptional recovery rates" that their collection letters appear "on law firm letterhead." (Riddle & Assocs. Promotional Materials 1, Ex. B. to Pl.'s Cross-Mot. Summ. J.) The clear implication is that Defendant itself, along with its customers and this Court, recognizes that vague legal references in the context of debt collection can strike fear in the least-sophisticated consumer and thereby secure payment. Such practices are clearly forbidden by the FDCPA. See Masuda v. Thomas Richards & Co., 759 F. Supp. 1456, 1461 (C.D. Cal. 1991) ("The representation that independent counsel has been hired may unjustifiably frighten the unsophisticated debtor into paying a debt that he or she does not owe. The FDCPA must be construed to proscribe this means of collection.").

In response, Defendant urges that if it did not emphasize its role as a law firm, it would "violate the disclosure requirements of the Connecticut licensing scheme" under CONN. GEN. STAT. § 36a-801. (Def.'s Mot. Summ. J. 7.) However, this Court finds that Section 36a-801 hurts, rather than helps, Defendant's argument. Section 36a-801 provides:

9

> No person, licensed to act within this state as a consumer collection agency shall do so under any other name or at any other place of business than that named in the license. Any change of location of a place of business of a licensee shall require prior written notice to the commissioner.

Defendant provides that it is authorized and licensed to collect debts under the name of "Riddle & Associates, P.C." (Def.'s Mot. Summ. J. 7.) Without more, this information suggests that Defendant's use of the label "Attorneys & Counselors at Law" in its letter to Plaintiff actually tacks more closely to violating section 36a-801, rather than ensuring compliance. The Court also notes that the phrase "A Professional Corporation" is approximately three-times smaller than the neighboring text that reads "Attorneys & Counselors at Law" and "Our Client: CAMCO-Capital." (See Riddle & Assocs. Collection Letter 1.) Again, these facts lead the Court to conclude that Defendant's self-identifying statements, rather than complying with disclosure requirements, instead suggest that the debtor faces the high stakes of litigation and therefore should cooperate. Accordingly, after reconsideration, this Court affirms its prior Ruling granting summary judgment for Plaintiff on his claim under § 1692e(5).

    B.    The Remaining FDCPA Claims Under §§ 1692e(2)(A) and (10)

Having affirmed its prior Ruling on Plaintiff's § 1692e(5) claim, this Court also affirms its prior Ruling granting summary judgment for Plaintiff on his claims arising under §§ 1692e(2)(A) and (10). Courts have long held that after finding a valid claim under a more specific subsection of § 1692e, such as § 1692e(5), further analysis under § 1692e(10) is "somewhat duplicative." Kapeluschnik, 1999 U.S. Dist. LEXIS 22883, at *26; see Clomon, 988 F.2d at 1321; Pipiles, 886 F.2d at 25-26 (holding that the "the vagueness of the language" in a notice suggested defendant would take actions it did not intend to take and therefore violated both §§ 1692e(5) and (10)). See generally Gaetano v. Payco of Wis., Inc., 774 F. Supp. 1404,

1415 (D. Conn. 1990) (finding that § 1692e(10) was violated as a matter of law where the defendant's attempt to collect a debt violated Connecticut state law). Therefore, having found that Defendant violated § 1692e(5) by threatening action that legally could not be taken, this Court affirms its prior Ruling and finds that defendant also used "false representation or deceptive means" to collect a debt from a consumer in violation of § 1692e(10).

With regard to Plaintiff's claim under § 1692e(2)(A), this Court also holds that its finding of a violation of § 1692e(5) is dispositive. Section § 1692e(2)(A) prohibits "[t]he false representation of . . . the . . . legal status of any debt," and as one court pointed out, "[c]ommon sense dictates that whether a debt is time-barred is directly related to the legal status of that debt." Shorty v. Capital One Bank, 90 F. Supp. 2d 1330, 1331 (D.N.M. 2000). A communication about whether a debt is time-barred implicates § 1692e(2)(A), and a threat to sue on a time-barred debt misrepresents its legal status. Kimber, 668 F. Supp. at 1489 (by threatening to sue a debt collector "implicitly represent[s] that it could recover in a lawsuit, when it fact it could not properly do so"); Taylor v. Unifund, No. 98 C 5921, U.S. 1999 Dist. LEXIS 13651, at *3-*4 (N.D. Ill. Apr. 30, 1999) (accepting the proposition that viable FDCPA claims exist where a debt collector knowingly threatens litigation on a time-barred suit); Simmons v. Miller, 970 F. Supp. 661, 664-65 (S.D. Ind.1997) (same); Stepney, 1997 WL 722972, at *14 (same); Martinez v. Albuquerque Collection Servs., Inc., 867 F. Supp. 1495, 1506 (D.N.M. 1994) ("A collection agency's attempts to collect on time-barred accounts violate the FDCPA."). Therefore, in light of this persuasive authority, this Court finds that because Plaintiff's debt was time-barred, Defendant's false threat of litigation in violation of § 1692e(5) also constitutes a misrepresentation of the legal status of Plaintiff's debt under § 1692e(2)(A).

C.    The Overshadowing Claim Under § 1692g(b)

The FDCPA requires that a debt collector supply the consumer with a validation notice within five days of an initial communication, informing the consumer that he or she has thirty days to request additional information and/or dispute the debt, and that upon such request and/or dispute the debt collector's collection activities shall cease. See 15 U.S.C. § 1692g. The FDCPA admonishes that "[a]ny collection activities and communication during the 30-day period may not overshadow or be inconsistent with" the validation notice. Id. § 1692g(b). "A debt collection notice is overshadowing or contradictory if it fails to convey the validation information clearly and effectively and thereby makes the least sophisticated consumer uncertain as to her rights." Savino v. Computer Credit, Inc., 164 F.3d 81, 85 (2d Cir.1998). Examples of "overshadowing" or "contradiction" within a validation notice include demands for immediate payment, id., and threats to take adverse action against the consumer prior to the expiration of the thirty-day dispute period. See, e.g., Russel v. Equifax A.R.S., 74 F.3d 30, 36 (2d Cir. 1996) ("We think it plain that plaintiff would not realize she had a statutory right to dispute the debt within 30 days in the face of a second notice from the debt collector giving her only 25 days.").

Previously, in granting Plaintiff's Motion for Summary Judgment, this Court concluded that no genuine issue of material fact existed as to whether Defendant's validation notice contained language that impermissibly overshadowed or contradicted the apprisal of Plaintiff's rights under the FDCPA. This conclusion was based on the existence of a settlement offer within Defendant's validation notice. Specifically, Defendant offered Plaintiff the opportunity to satisfy the debt if fifty-percent of the outstanding amount was submitted within thirty days of the *date of the validation notice*. (Rul. Mot. Summ. J. 14.) This Court noted that under § 1692g, the

12

consumer is entitled to thirty days from the *date of receiving the validation notice* to dispute the validity of the debt. (Id.) As a result, this Court deemed that the letter contained "mutually exclusive opportunities" that worked to "overshadow and contradict" the apprisal of Plaintiff's statutory right to dispute the debt.

As a preliminary matter, this Court finds that upon reconsideration, the opportunities presented in Defendant's validation notice were not "mutually exclusive." Thirty days from the receipt of Defendant's validation notice and thirty days from the date of the validation notice describe overlapping periods of time.[2] Therefore, according to the plain meaning of the notice, there existed a period of time in which Plaintiff could have disputed the debt or requested the name and address of the original creditor, and at the same time availed himself of the discount.

Ultimately, even if Defendant's validation notice described "mutually exclusive" opportunities, this Court finds that Defendant's settlement offer was clearly distinguishable from the apprisal of Plaintiff's statutory rights under § 1692g. As such, merely including a settlement offer within a validation notice does not direct a finding of overshadowing or contradiction. On the contrary, in light of persuasive precedent and policy, this Court concludes that the mere existence of a settlement offer in a validation notice is insufficient to constitute an overshadowing claim under the FDCPA as a matter of law. Other courts in the Second Circuit have held that settlement offers do not overshadow validation notices. For example, in Omogbeme v. Risk Management Alternatives, Inc., No. 01 CV 7293 (SJ), 2003 WL 21909773,

---

[2] While it is true that these periods of time could be "mutually exclusive" if the letter was dated long before it was ever sent and received, it is undisputed that the letter was mailed as of its stated date. (See Pl.'s Cross-Mot. Summ. J. 26-7.) For present purposes, there is no reason to doubt that the letter was received within a few days of mailing.

at *3 (E.D.N.Y. Aug. 4, 2003), the court held that a validation notice containing a settlement offer for forty-nine percent of the amount owed did not violate § 1692g. The fact that a discount offer expires before the thirty day validation period also did not provide evidence of overshadowing. Id.; see Harrison v. NBD, 968 F. Supp. 837, 848 (E.D.N.Y. 1997) ("If a debtor chooses to reject the discount offer, at worst, she or he would be liable for the original amount of the debt.") To hold otherwise would likely dissuade debt collectors from providing consumers with discounted settlement offers–a result that would be both "unwise and against the consumers' best interests." Sarder v. Acad. Collection Serv., Inc., No. CV 02-2486 NG VVP, 2005 WL 615831, at *3 (E.D.N.Y. Mar. 3, 2005); see also Lewis v. ACB Bus. Servs., Inc., 135 F.3d 389, 399 (6th Cir. 1998) ("To hold that a debt collector cannot offer payment options as part of an effort to resolve an outstanding debt . . . would force honest debt collectors seeking a peaceful resolution of the debt to file suit in order to advance efforts to resolve the debt–something that is clearly at odds with the language and purpose of the FDCPA."). Therefore, this Court vacates its prior Ruling and grants Defendant's Motion for Summary Judgement on Plaintiff's claim under § 1692g.

    D.    Defendant's Bona Fide Error Defense Under § 1692k

In its prior Ruling, this Court held that Defendant could not avail itself of the "bona-fide error" ("BFE") defense provided under § 1692k(c) of the FDCPA. Section 1692k(c) provides:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

Upon reconsideration, this Court affirms its prior holding.

It is undisputed that Defendant's communications to Plaintiff were intentional. However,

Defendant argues that it is entitled to the BFE defense because it did not subjectively intend to violate the FDCPA. (Def.'s Mot. Recons. 21.) However, as the Seventh Circuit noted in Neilson v. Dickerson, 307 F.3d 623, 641 (7th Cir. 2002), "[t]here is a split of authority among the circuits as to whether the bona fide error defense applies to mistakes of law. The majority view is that the defense is only available for clerical and factual errors." The Second Circuit is included within this majority. See Pipiles, 886 F.2d at 27 ("[I]t is likely that the violations which we have found resulted from a mistaken view of the law, which section 1692k(c) does not excuse."); see generally Clomon, 988 F.2d at 1322 (rejecting the defense of reliance upon "authoritative interpretations" of the law). Defendant's argument is accordingly without merit. Therefore, upon reconsideration, this Court's prior Ruling denying Defendant's BFE defense under § 1692kc is affirmed.

      E.      Plaintiff's CUTPA Claim

Previously, this Court held that Defendant's violations of the FDCPA also constituted a violation of CUTPA. In doing so, this Court adopted Plaintiff's novel argument that a violation of the FDCPA constituted the denial of an implied contractual benefit, which in turn satisfied CUTPA's "ascertainable loss" requirement. However, upon reconsideration, this Court finds that this argument is inapplicable given the facts of the instant case.

CUTPA prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." CONN. GEN. STAT. § 42-110b(a). To prevail on a claim under CUTPA, a plaintiff must demonstrate that he or she suffered "ascertainable loss of money or property, real or personal" as a result of the conduct prohibited by the Act. CONN. GEN. STAT. § 42-110g(a); see

Hinchliffe v. Am. Motors Corp., 184 Conn. 607, 615, (1981) ("The ascertainable loss requirement is a threshold barrier which limits the class of persons who may bring a CUTPA action seeking either actual damages or equitable relief."). CUTPA's ascertainable loss requirement applies to violations of the FDCPA, and in this regard courts in this district have consistently held that false communications from a debt collector alone, without further damage to a plaintiff, are insufficient to constitute ascertainable loss. See Goins v. JBC & Assocs., P.C., 352 F. Supp. 2d 262, 275 (D. Conn. 2005); Maguire v. Citicorp Retail Servs., Inc., No. CIV 3:95CV2113 (AHN), 1997 WL 280540, at *6 (D. Conn. May 19, 1997), aff'd in part, vacated and remanded in part on other grounds, 147 F.3d 232 (2d Cir. 1998); Tragianese v. Blackmon, 993 F. Supp. 96, 100 (D. Conn. 1997); Young v. Citicorp Retail Servs., Inc., No. CIV. 3:95CV1504 (AHN), 1997 WL 280508, at *6-7 (D. Conn. 1997), aff'd, 159 F.3d 1349 (2d Cir. 1998); Krutchkoff v. Fleet Bank, N.A., 960 F. Supp. 541, 550 (D. Conn. 1996).

Plaintiff argues that there exists "a substantial benefit implicit in *every* consumer credit contract, namely: that should the consumer default . . . the creditor (its agents and assigns) shall collect the debt" in accordance with the FDCPA. (Pl.'s Cross-Mot. Summ. J. 34.) Therefore, the argument goes, a violation of the FDCPA works to deprive Plaintiff of the "benefit of his bargain." Certain language in Connecticut case law may suggest that CUTPA's ascertainable loss requirement is satisfied simply by a deprivation of the benefit of plaintiff's bargain. For example, in Rizzo Pool Co. v. Del Grosso, although the court denied defendants' CUTPA counterclaim because they failed to provide sufficient evidence of damages constituting ascertainable loss, the court indicated that it was a separate issue whether ascertainable loss could be claimed "by virtue

16

of the fact that the plaintiff's failure to install the swimming pool deprived them of the benefit of their bargain." 232 Conn. 666, 685 n.30 (1995). See also Hinchliffe, 184 Conn. at 614 ("Whenever a consumer receives something other than what he bargained for, he has suffered a loss of money or property."); Larobina v. Home Depot, USA, Inc., 76 Conn. App. 586, 596 (2003) (holding that the loss of a contract failed to constitute ascertainable loss under CUTPA); Johnson Elec. Co. v. Salce Contracting Assocs., Inc., 72 Conn. App. 342, 355 (2002) ("On its face, the loss of a contract is an ascertainable loss.").

Plaintiff's contractual interpretation of CUTPA's "ascertainable loss" requirement implicates many difficult issues regarding the interaction of the FDCPA, CUTPA, and Connecticut contract law. However, the Court does not need to reach most of these issues because upon reconsideration it finds that Plaintiff's argument is inapplicable to the facts of the instant case. There is no evidence of Plaintiff and Defendant in contractual privity. Assuming that Plaintiff and his creditor entered into a valid consumer credit contract, and also assuming that an implied term of this contract was to collect the debt in accordance with the FDCPA, the reach of this contractual obligation was confined to the creditor and its successors in interest. The original creditor in this case was MBNA, and its successor in interest was CAMCO, which then hired Defendant to collect on Plaintiff's debt. As such, Defendant is not a party to the consumer credit contract, and therefore did not breach any contractual obligation *to Plaintiff* through its violation of the FDCPA. This situation stands in stark contrast to the cases supporting Plaintiff's contractual interpretation of CUTPA's "ascertainable loss" requirement. In each of those cases, the parties stood in contractual privity, and the breach of one party supplied the ascertainable loss

required by CUTPA. Therefore, upon reconsideration, this Court denies Plaintiff's CUTPA claim and grants summary judgment for Defendant.

IV. CONCLUSION

For the reasons stated herein, Defendant's Motion for Reconsideration [Doc. No. 33] is **granted**. The Court has reexamined the merits of Defendant's claims, and the prior Ruling is **vacated in part** and **affirmed in part**. Defendant's Motion for Summary Judgment [Doc. No. 18] is **granted** on Plaintiff's overshadowing claim arising under § 1692g of the FDCPA and Plaintiff's claim under CUTPA, but is **denied** as to Plaintiff's remaining claims and as to Defendant's bona-fide error defense under § 1692k. The Court's prior Ruling granting summary judgment to Plaintiff on his claims under §§ 1692e(5), (10), and (2)(A) of the FDCPA is **affirmed.**

SO ORDERED.

Dated at New Haven, Connecticut, March  16 , 2007

/s/
Peter C. Dorsey, U.S. District Judge
United States District Court